## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Amandeep Jassal, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO. |
| v. | CLASS ACTION COMPLAINT |
| A & M Acquisitions, LLC d/b/a Easy Cash Deal, and Vanguard Realty Alliance, LLC d/b/a VRA Realty, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

### Nature of this Action

1.      Amandeep Jassal ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against A & M Acquisitions, LLC d/b/a Easy Cash Deal ("Easy Cash") and Vanguard Realty Alliance, LLC d/b/a VRA Realty ("VRA Realty", and, collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2.      Upon information and belief, Defendants routinely violate 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice to place non-emergency calls to telephone numbers assigned to a cellular telephone service without prior express consent.

3.      Specifically, Defendants routinely and repeatedly call consumers' cellular telephone numbers—like Plaintiff—while leaving artificial or prerecorded voice messages to suspected homeowners in an effort to either purchase their property or gauge their interest in Defendants' real estate services.

4.      Additionally, upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by placing more than one advertisement or marketing telephone call to residential or cellular telephone numbers registered with the National

Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

5.      Lastly, upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

### Parties

6.      Plaintiff is a natural person who at all relevant times resided in Greenlawn, New York.

7.      VRA Realty is a Pennsylvania limited liability company operating a real estate business headquartered in West Chester, Pennsylvania.

8.      Easy Cash is a Pennsylvania limited liability company operating a real estate business headquartered in Stroudsburg, Pennsylvania.

9.      Easy Cash is run by Alex Camaerei and Marcello Riccardi, each of whom are VRA Realty agents.

10.     Mr. Camaerei holds an active Pennsylvania Associate Broker license from the State Real Estate Commission, and Mr. Riccardi holds a Pennsylvania Real Estate Salesperson license from the State Real Estate Commission.

11.     Mr. Camaerei's and Mr. Riccardi's respective licenses are formally associated with VRA Realty's Pennsylvania Broker license, per the State Real Estate Commission, and also each indicate that Mr. Camaerei and Mr. Riccardi operate out of King of Prussia, Pennsylvania.

**Jurisdiction and Venue**

12.     This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(1)(a)(iii), and 28 U.S.C. § 1331.

13.     Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) as VRA Realty is based in this district and a significant portion of the events giving rise to this action occurred in this district.

14.     In particular, upon information and belief, Defendants are located in this district and directed their solicitation calls and artificial or prerecorded voice messages to Plaintiff's telephone from this district.

**Factual Allegations**

15.     Plaintiff is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number—(516) 410-XXXX.

16.     Plaintiff uses his cellular telephone as his personal residential telephone number.

17.     In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

18.     Plaintiff registered his cellular telephone number with the DNC Registry on September 12, 2005, and has maintained that registration through the present date.

19.     Beginning around May of 2024, and continuing through the present on an intermittent basis, Plaintiff received several telephone calls from a rotating series of telephone numbers, including at least two corresponding prerecorded voice messages to his cellular telephone.

20.    In these prerecorded voice messages, the caller did not identify themselves other than using the name "Nick," and inquired whether Plaintiff would be willing to sell his property to the caller or otherwise use their real estate services:



21.    Upon information and belief, based on the generic nature of the messages, the long pause before the message commenced, and the static audio accompanying the messages,

the messages were sent with the use of a prerecorded voice.

22.     Samples of these messages can be found <u>HERE</u>.

23.     Plaintiff did not request any services discussed in the subject telephone calls or voicemail messages.

24.     Upon information and belief, Easy Cash placed two or more calls to Plaintiff in a one-year period.

25.     Although Defendants failed to identify who they were aside from "Nick," the callback number provided, (570) 464-9868, is used by Alex Camaerei, one of the owners of Easy Cash and employed by VRA Realty.

26.     Mr. Camaerei and Mr. Riccardi are prominently displayed on the front page of Easy Cash's website.[1]

27.     Plaintiff is not, and was not, interested in selling his property, and did not even own the property that Defendants were calling him about, having sold it in 2021.

28.     Plaintiff is not, and was not, interested in Defendants' services or marketing.

29.     Upon information and belief, Easy Cash is a real estate wholesaler, which is a commonly-used strategy to (1) persuade a homeowner to sell their home to the wholesaler at a substantial discount below fair market value, in exchange for a suite of services to ease the sale, then (2) prior to completing the purchase, remarket the property to third-party purchasers or investors, in order to (3) assign or sell the contract to that investor for a substantial premium, thereby allowing the investor to step into Easy Cash's shoes and acquire the house instead, with the difference in price solely allocated to Easy Cash as profit, instead of the homeowner.

---

[1]     https://www.easycashdeal.com/ (last visited February 17, 2025).

30.    In doing so, Easy Cash offers to purchase homeowners' properties for cash, offering to take care of all aspects of the transaction to facilitate a quick transaction without the need for a real estate agent or Multiple Listing Service ("MLS") listing.[2]

31.    On the other hand, upon information and belief, if a homeowner does not wish to transact with Easy Cash in a wholesale transaction, Easy Cash also offers traditional real estate representation through via VRA Realty.

32.    Easy Cash necessarily offers to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, preparing and completing purchase paperwork, and connecting the homeowner with potential third-party buyers—with their communications to Plaintiff.[3]

33.    Easy Cash touts that, after acquiring leads to potentially purchase a property, it retains a portion of those leads for renovation and subsequent resale, and remarkets other properties to other potential third-party purchasers or investors.[4]

34.    Upon information and belief, Easy Cash seeks to supplant the role of a traditional real estate agent while providing many of the same services as a real estate agent, and in exchange for doing so, are compensated by obtaining a homeowner's property at a reduced price, and thereafter either (1) selling it at an inflated price; (2) reassigning the right to purchase the property

---

[2]    *Id.*

[3]    *See, e.g.*,  https://www.liveabout.com/what-real-estate-agents-do-2866370 (last visited February 17, 2025) (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing[ the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.").

[4]    https://youtu.be/qnwJ0vztmMM?si=mx54kYhZnoi0idT9 (last visited February 17, 2025).

to an investor for a fee; or (3) renting the property as a landlord.

35.    Upon information and belief, in exchange for providing these services, Defendants pay substantially below fair market value for the homes they seek to purchase.

36.    In fact, Easy Cash makes this understanding explicit in some of their investor-facing listings, noting the substantial profits an investor would receive if they acquire the property and invest a relatively nominal amount into renovation:[5]

---

[5]    https://www.instagram.com/stories/highlights/17972905129491928/    (last    visited
February 17, 2025).



37.    Easy Cash targets a minimum profit of $30,000 for each of its fix-and-flip real estate transactions,[6] and between $11,000 and $12,000 in assignment fees when it assigns the right

---

[6]    https://youtu.be/qnwJ0vztmMM?si=yFRChNs_zgTT0xn2&t=2777  (last visited February 17, 2025).

to purchase directly to an investor.[7]

38.     As a result, Easy Cash would be (and, upon belief and information, is) compensated for their services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

39.     This is further accentuated by the fact that Easy Cash is owned and managed by licensed real estate agents, who cross-promote both ventures publicly, and appear to also provide conventional real estate representation to consumers they solicit via telemarketing cold-calls.

40.     Notably, the State of Pennsylvania recently enacted a law to clarify that "wholesaling" in the context of the real estate industry qualifies as working in real estate, and mandating that individuals conducting wholesale real estate transactions be licensed as real estate salespeople or brokers. *See* 2024 Pa. Laws 52, 2023 Pa. SB 1173. Specifically, the definition of "broker" and "salesperson" was amended to specifically include those who engage or attempt to engage in "wholesale transactions," which was separately defined to constitute an "[u]ndertaking to promote the sale, exchange or purchase of an equitable interest or other interest in residential property with the intent to assign, sell or otherwise transfer the interest for a fee, commission or other valuable monetary consideration without having taken title as the owner of record of the interest." *Id*.

41.     Upon information and belief, VRA Realty explicitly endorses and facilitates Easy Cash's telemarketing business model.

---

[7]     https://youtu.be/qnwJ0vztmMM?si=O8cxVxw30ffTaI1p&t=2857 (last visited February 17, 2025).

42.    For example, VRA Realty touted its addition of Easy Cash to its roster of real estate agents in a post titled "VRA Realty Welcomes Investor-Focused Powerhouse: The Easy Cash Deal Team Joins the Family."[8]

43.    The post continues: "Alex and Marcello bring more than just real estate experience to the table. They're seasoned investors themselves, with a proven track record of success and a deep understanding of the investor mindset. This unique combination makes them invaluable assets to VRA Realty, particularly for our investor-friendly brokerage. . . . As investor-focused agents themself, Alex and Marcello understand the intricacies of the investment market. They don't just find properties; they empower clients to make informed decisions that align with their long-term financial goals. Whether you're a first-time homebuyer or a seasoned investor looking to expand your portfolio, Alex and Marcello will guide you through every step of the process, ensuring a smooth and successful transaction. . . . Their arrival further strengthens our ability to cater to a broader range of clients, especially those seeking investment opportunities in the Pocono Mountains. . . . If you're looking to buy, sell, or invest in real estate, particularly in the Pocono Mountains region, look no further. Contact VRA Realty today and connect with Alex Camaerei or Marcello Riccardi. Let their expertise and unwavering commitment guide you towards achieving your real estate goals."[9]

44.    The post concludes with: "For more information about VRA Realty, our services, or the Easy Cash Deal team, visit our website or call us today. Let's discuss how we can help

---

[8]    https://vrarealty.com/blog/VRA-Realty-Welcomes-Investor-Focused-Powerhouse--The-Easy-Cash-Deal-Team-Joins-the-Family (last visited February 17, 2025).

[9]    *Id.*

you achieve your real estate aspirations!"[10]

45.    Mr. Camaerei's representations regarding Easy Cash's joint venture with VRA Realty are echoed on his professional Instagram page, noting numerous properties for sale with VRA Realty's logo, and providing Mr. Camaerei's VRA Realty contact information for consumer or investor inquiries, alongside Easy Cash's website:[11]

---

[10]    *Id.*

[11]    https://www.instagram.com/poconohomes_sold/ (last visited February 17, 2025).







46.    Easy Cash also provides a list of its inventory for sale to investors, which itself

directs to Mr. Camaerei's VRA Realty MLS page at

https://www.flexmls.com/share/Bd2ft/Selected.[12]

47.    Upon information and belief, VRA Realty operates or partners with Easy Cash as

---

[12]    https://www.instagram.com/p/DFzVlbEyafP/ (last visited February 17, 2025); *see also*
https://www.facebook.com/easycashdeal/posts/pfbid02K96cyu3jVTZXwe97qUsWiirE6t6fWBp
M4eXFzxYttDNRZ4txQA9JLx76LUrHUe2zl (last visited February 17, 2025).

part of its real estate wholesaler operations, including directing, or causing, Easy Cash to mass market to consumers via telephone call and text message campaigns.

48.    Alternatively, VRA Realty knew or should have known that Easy Cash mass marketed to consumers via telephone call campaigns as part of Easy Cash's efforts to perform real estate wholesale operations on behalf of VRA Realty, and VRA Realty knowingly accepted the benefits of Easy Cash's telemarketing operations and ratified Easy Cash's conduct.

49.    VRA Realty is directly compensated as a result of some or all of the real estate transactions involving Easy Cash, via a series of flat or percentage fees charged for each transaction.[13]

50.    In exchange for these fees, VRA Realty provides "cutting-edge training, technology, and support" to its agents, including those at Easy Cash.

51.    Moreover, by actively promoting Easy Cash and lending their trade name and resources, and providing "training, technology, and support" to Easy Cash, VRA Realty is either directly responsible for sending the communications at issue, or ratified Easy Cash's wholesaling business model.

52.    Plaintiff did not give Defendants prior express consent or prior express written consent to place calls to his cellular telephone number by using an artificial or prerecorded voice.

53.    Upon information and belief, and in light of the nature and character of the voice messages at issue, including the delivery of repeated identical voicemail messages, Defendants used a prerecorded voice to deliver calls to Plaintiff's cellular telephone number.

54.    Upon information and belief, Defendants placed the calls to Plaintiff's cellular

---

[13]    https://vrarealty.com/careers (last visited February 17, 2025).

telephone number for non-emergency purposes.

55. Upon information and belief, Defendants placed the calls to Plaintiff's cellular telephone number voluntarily.

56. Upon information and belief, Defendants placed the calls to Plaintiff's cellular telephone number under their own free will.

57. Upon information and belief, Defendants had knowledge that they were using an artificial or prerecorded voice to place their calls to Plaintiff's cellular telephone number.

58. Upon information and belief, Defendants intended to use an artificial or prerecorded voice to place calls to Plaintiff's cellular telephone number.

59. The purpose of the solicitation calls at issue was to advertise and to market Defendants' business or services.

60. Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors, including by way of executing assignment contracts.

61. As a result, Defendants either (1) solicited Plaintiff to sell his property to them at a discount in order for Defendants to resell or rent Plaintiff's property, or (2) solicited Plaintiff to submit his information to Defendants' lead generation service and, if Plaintiff expressed an interest in selling his home, Defendants would then sell that via an assignment contract or immediate purchase-and-resale to investors for a profit.

62. Plaintiff did not give Defendants prior express invitation or permission to place advertising or telemarketing calls to his cellular telephone number.

63. Plaintiff suffered actual harm as a result of the calls at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

64.    Plaintiff suffered additional harm due to his frustration and difficulty in identifying the entity or entities and persons responsible for the unwanted advertisement or marketing telephone calls to his cellular telephone number.

65.    Upon information and belief, Defendants knew, or should have known, that Plaintiff registered his cellular telephone number with the DNC Registry.

**Class Action Allegations**

66.    Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (the "Classes"):

**Robocall Class:**

All persons and entities throughout the United States (1) to whom A & M Acquisitions, LLC or Vanguard Realty Alliance, LLC placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to a customer of A & M Acquisitions, LLC or Vanguard Realty Alliance, LLC, (2) by using an artificial or prerecorded voice, (3) from four years preceding the date of this complaint through the date of class certification.

**Federal Do-Not-Call Registry Class:**

All persons throughout the United States (1) to whom A & M Acquisitions, LLC or Vanguard Realty Alliance, LLC placed, or caused to be placed, more than one call within a 12-month period, promoting A & M Acquisitions, LLC's or Vanguard Realty Alliance, LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before A & M Acquisitions, LLC or Vanguard Realty Alliance, LLC placed, or caused to be placed, at least two of the telephone calls within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

All persons and entities throughout the United States (1) to whom A & M Acquisitions, LLC or Vanguard Realty Alliance, LLC placed, or caused to be placed, more than one call within a 12-month period, promoting A & M Acquisitions, LLC's or Vanguard Realty Alliance, LLC's, or their business partners', goods or services, (2) where the subject calls did not state the name of the individual caller, the name of A & M Acquisitions, LLC or Vanguard Realty

Alliance, LLC, and a telephone number or address at which A & M Acquisitions, LLC or Vanguard Realty Alliance, LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

67. Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

68. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

69. The exact number of members of the Classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

70. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

71. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

72. Plaintiff's claims are typical of the claims of the members of the Classes.

73. As they did for all members of the Robocall Class, Defendants placed telephone calls by using an artificial or prerecorded voice to Plaintiff's telephone number absent prior express consent.

74. As they did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered solicitation telephone calls to Plaintiff's telephone number more than thirty days after Plaintiff registered their cellular telephone numbers with the DNC Registry.

75. As they did for all members of the Sender Identification Class, Defendants delivered solicitation telephone calls to Plaintiff's telephone number where the subject telephone

calls did not state the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted.

76.    Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

77.    Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

78.    Plaintiff suffered the same injuries as the members of the Classes.

79.    Plaintiff will fairly and adequately protect the interests of the members of the Classes.

80.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

81.    Plaintiff will vigorously pursue the claims of the members of the Classes.

82.    Plaintiff has retained counsel experienced and competent in class action litigation.

83.    Plaintiff's counsel will vigorously pursue this matter.

84.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the Classes.

85.    The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

86.    Issues of law and fact common to all members of the Classes include:

    a.    For the Robocall Class, Defendants' practice of placing telephone calls to cellular telephone numbers, with the use of an artificial or prerecorded voice, absent prior express consent;

    b.    For the Federal Do-Not-Call Registry Class, Defendants' practice of

18

placing telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c.    For the Sender Identification Class, Defendants' practice of placing telephone calls, for solicitation purposes, without identifying the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

d.    Defendants' conduct, pattern, and practice as it pertains to delivering artificial or prerecorded voice solicitation messages;

e.    VRA Realty's responsibility and role in Easy Cash's delivery of artificial or prerecorded voice messages to cellular telephone numbers absent prior express consent, along their his responsibility and role in Easy Cash's placement of telephone calls to telephone numbers already registered on the DNC Registry absent prior express written consent;

f.    Defendants' violations of the TCPA; and

g.    The availability of statutory penalties.

87.    A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

88.    If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

89.    The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

90.    The pursuit of separate actions by individual members of the Classes could create

a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

91.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

92.    The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

93.    The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

94.    There will be no extraordinary difficulty in the management of this action as a class action.

95.    Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**On behalf of the Robocall Class**

96.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-95.

97.    Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by delivering artificial or prerecorded voice messages to Plaintiff's cellular telephone number without prior express consent.

98.    In the alternative, Easy Cash violated 47 U.S.C. § 227(b)(1)(A)(iii) by delivering artificial or prerecorded voice messages to Plaintiff's cellular telephone number without prior

express consent, and VRA Realty is liable for Easy Cash's violations because (1) they ratified Easy Cash's conduct by either accepting leads generated by Easy Cash's robocalling campaign, agreeing to share revenue with Easy Cash that arose out of that robocalling campaign, and promoting, and supporting Easy Cash's wholesaling business model; or (2) Easy Cash acted with actual authority on behalf of VRA Realty in robocalling consumers without obtaining prior express consent.

99.    As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff, and the members of the Robocall Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

100.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-95.

101.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

102.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

103.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

104.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

105.    Defendants violated 47 U.S.C. § 227(c)(5) because they placed, or caused to be placed, to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200.

106.    In the alternative, Easy Cash violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who *registered* their respective cellular or residential telephone numbers with the DNC Registry, and VRA Realty is liable for Easy Cash's violations because (1) they ratified Easy Cash's conduct by either accepting leads generated by Easy Cash's telemarketing campaign, agreeing to share revenue with Easy Cash that arose out of that telemarketing campaign, and promoting, and supporting Easy Cash's wholesaling business model; or (2) Easy Cash acted with actual authority on behalf of VRA Realty in telemarketing to consumers who registered their respective cellular or residential telephone numbers on the DNC Registry without obtaining prior express written consent.

107.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count III**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

108.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-95.

109.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

110.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

111.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

112.    Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

113.    Defendants therefore violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

114.    In the alternative, Easy Cash violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members without providing required disclosures, and VRA Realty is liable for Easy Cash's violations because (1) they ratified Easy Cash's conduct by either accepting leads generated by Easy Cash's telemarketing campaign, agreeing to share revenue with Easy Cash that arose out of that telemarketing campaign, and promoting, and supporting Easy Cash's wholesaling business model; or (2) Easy Cash acted with actual authority on behalf of VRA Realty in telemarketing to consumers who registered their respective cellular or residential telephone numbers on the DNC Registry without obtaining prior express written consent.

115.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action;

b.    Designating Plaintiff as a class representative of the proposed Class under Federal Rule of Civil Procedure 23;

c.    Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d.    Adjudging and declaring that Defendants violated 47 U.S.C. §

24

227(b)(1)(A)(iii) and 47 U.S.C. § 227(c)(5);

e.     Enjoining Defendants from continuing their violative behavior, including placing telephone calls with the use of an artificial or prerecorded voice to consumers without prior express consent, and placing solicitation calls to telephone numbers registered with the DNC Registry for at least thirty days;

f.     Awarding Plaintiff and the members of the Robocall Class damages under 47 U.S.C. § 227(b)(3)(B);

g.     Awarding Plaintiff and the members of the Robocall Class treble damages under 47 U.S.C. § 227(b)(3)(C);

h.     Awarding Plaintiff and the members of the Federal Do-Not-Call Registry Class and Sender Identification Class damages under 47 U.S.C. § 227(c)(5)(B);

i.     Awarding Plaintiff and the members of the Federal Do-Not-Call Registry Class and Sender Identification Class treble damages under 47 U.S.C. § 227(c)(5)(C);

j.     Awarding Plaintiff and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

k.     Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

l.     Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

<div style="margin-left: 4em;">

Kimmel & Silverman, P.C.

Date: March 4, 2025

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Craig T. Kimmel, Esq.
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 x 104
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com

Alex D. Kruzyk* (to seek admission *pro hac vice*)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
akruzyk@pkglegal.com

*Counsel for Plaintiff and the proposed classes*

</div>